## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

JAN KONOPCA,

      *Plaintiff*,

vs.

FDS BANK,

       *Defendant*.

Civil Action No.
3:15-cv-01547 (PGS)(LHG)

---

## DEFENDANT'S MEMORANDUM OF LAW ON STANDING

---

**GERBER & PARTNERS LLP**
155 Willowbrook Boulevard, Suite 300
Wayne, New Jersey 07470
(973) 256-9000

Matthew S. Hendricks, Esq.
(admitted *pro hac vice*)
Macy's – Law Department
111 Boulder Industrial Drive, 2nd Floor
Bridgeton, MO 63044
(314) 342-6354

*Attorneys for Defendant FDS Bank*

Dated: February 9, 2017

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ........................................................................................1

II.   SUMMARY OF EVIDENCE EXPECTED AT HEARING ...............................2

      A.    Plaintiff transferred his number from a landline to cell phone. ............................2

      B.    Plaintiff rarely uses 2222 number, one of his three cell phones. ...........................3

      C.    Plaintiff waits out the four-year limitation period to maximize windfall. ..............4

      D.    Plaintiff claims he keeps the 2222 number because so his mother in Poland
            can reach him. His phone records say otherwise. ...................................................5

      E.    Plaintiff's only current source of income is TCPA litigation. ................................6

III.  LEGAL ARGUMENT...................................................................................6

      A.    Standing to Bring Claims.........................................................................................6

      B.    Plaintiff consented to receive the calls...................................................................10

            i.    Consent is simply "willingness for conduct to occur."..............................10

            ii.   Plaintiff "gratuitously created circumstances" for his TCPA claim. .........11

      C.    Plaintiff does not have standing if he manufactured his claim ..............................14

IV.   CONCLUSION..........................................................................................17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arizonans for Official English v. Arizona*,
  520 U.S. 43 (1997)................................................................6

*Beyond Systems, Inc. v. Kraft Foods, Inc.*,
  777 F.3d 712 (4th Cir. 2015) ...............................1, 11, 12, 13, 14

*Busching v. Sup. Ct.*,
  12 Cal.3d 44 (1974) ............................................................12

*Cellco P'ship v. Wilcrest Health Care Mgmt.*, No. 09-3534,
  2012 U.S. Dist. LEXIS 64407 (D.N.J. May 8, 2012) ........................15

*Clapper v. Amnesty Int'l USA*,
  133 S.Ct. 1138 (2013)..........................................................14

*Fortyune v. Am. Multi-Cinema, Inc.*,
  364 F.3d 1075 (9th Cir. 2004) ................................................7

*Gager v. Dell Fin. Servs., LLC*,
  727 F.3d 265 (3d Cir. 2013)...................................................10

*Gladstone, Realtors v. Village of Bellwood*,
  441 U.S. 91 (1979)..............................................................8

*Gordon v. Virtumundo*,
  575 F.3d 1040 (9th Cir. 2009) ............................................11, 12

*Lewis v. Casey,*
  518 U.S. 343 (1996)..............................................................6

*Leyse v. Bank of Am. Nat. Ass'n*,
  804 F.3d 316 (3d Cir. 2015)................................................10, 15

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)..........................................................7, 8, 9

*Nat'l Family Planning & Reproductive Health v. Gonzales*,
  468 F.3d 826 (D.C. Cir. 2006) ................................................14

*National Org. for Women, Inc. v. Scheidler*,
  510 U.S. 249 (1994)..............................................................6

*Raines v. Byrd, supra*,
    521 U.S. 811 (1997)................................................................8

*Ryabyshchuck v. Citibank (S. Dakota) N.A.*, No. 11-CV-1236-IEG WVG,
    2012 WL 5379143 (S.D. Cal. Oct. 30, 2012) ................................10

*Schumacher v. Credit Prot. Ass'n,* No. 4:13-CV-164,
    2015 U.S. Dist. LEXIS 132752 (S.D. Ind. Sept. 30, 2015) ................15

*Shager v. Upjohn Co.*,
    913 F.2d 398 (7th Cir. 1990) ...............................................12

*Spokeo v. Robins*,
    578 U.S.___, 194 L. Ed. 2d 635 (2016)................................7, 8, 9

*Stoops v. Wells Fargo Bank, N.A.*, Case No. 15-0083,
    2016 U.S. Dist. LEXIS 82380 (W.D. Pa. June 24, 2016)..............15, 16, 17

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009)............................................................8

*UPS Worldwide Forwarding v. United States Postal Serv.*,
    66 F.3d 621 (3d Cir. 1995)...................................................16

**Statutes**

15 U.S.C. § 7704(a)(1), (2) ......................................................12

15 U.S.C. § 7704(a)(3), (a)(5)...................................................12

15 U.S.C. § 7706(g)(1), (3).......................................................13

28 U.S.C. § 1658(a) ................................................................4

47 U.S.C. § 227(b)(1)(A)..........................................................10

47 U.S.C. § 227(b)(1)(A)(iii).......................................................2

47 U.S.C. § 227(b)(3) ..............................................................2

47 U.S.C § 227(b)(3)(A), (B), and (C) ............................................9

**Constitutional Provisions**

U.S. Const. art. III, § 2...........................................................6

U.S. Const. art. III, § 2, cl. 1 ..................................................................................6, 7

**Other**

Black's Law Dictionary 1805 (10th ed. 2014)...........................................................11

Restatement (Second) of Torts § 892 ........................................................................10

Restatement (Second) of Torts § 892A cmt. a (1979) ..............................................11

## I.     INTRODUCTION

Plaintiff Jan Konopca invited and sought out the wrong number calls to his 222-2222 number for which he now sues under the Telephone Consumer Protection Act of 1991 ("TCPA"), one of over 30 such lawsuits under the statute he has filed in this jurisdiction since the beginning of 2014. Plaintiff's behavior, phone records, and disingenuous deposition testimony make one thing clear: he intended to—and thus consented to—receive as many wrong number calls as possible during the four-year TCPA limitations period in order to maximize the pot of gold at the end of the statutory rainbow. Defendant FDS Bank ("FDS" or "Defendant") was one of many entities to fall into his trap, a premeditated, profit-maximizing scheme to exploit a federal statute by manufacturing the very harm for which he now sues.

Plaintiff is no more a "victim" here than a person who creates numerous e-mail addresses to collect spam messages. In such a situation, when a party "gratuitously created circumstances that would support a legal claim and acted with the chief aim of collecting a damage award"—in other words, engineered statutory violations by his own conduct—that party cannot recover for such violations. *Beyond Systems, Inc. v. Kraft Foods, Inc.*, 777 F.3d 712, 718–19, 719 n.2 (4th Cir. 2015) (citation omitted).  Because he has specifically invited the "harm" he now complains of, he is without standing and his cause should be dismissed.

1

Should the Court refrain from putting a halt to Plaintiff's scam, his lawsuits will continue unabated given the deluge of calls to 222-2222, which has averaged over 20 incoming calls per day since March 2011, with some months receiving calls totaling in the thousands. This Court has the power and the obligation to protect its jurisdiction from being misused in such a manner.

## II.     SUMMARY OF EVIDENCE EXPECTED AT HEARING

### A.     Plaintiff transferred his number from a landline to cell phone.

It is a violation of the TCPA to "make any call . . . to any telephone number assigned to a . . . cellular telephone service" using an automatic telephone dialing system ("ATDS") or an artificial or prerecorded voice, without the "prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A)(iii). The statute permits a private right of action for $500 per violation—i.e., for each call—that can be trebled upon a finding of willful or knowing conduct. 47 U.S.C. § 227(b)(3). However, if such a call is made to a landline, there is no violation and thus the called party may not recover damages.

Plaintiff has been the subscriber and primary user of the unique and memorable[1] phone number 222-2222 for approximately 12 years. Plaintiff

---

[1]     The number is so easy to remember that a California legal services company using the trade name "Los Abogados" uses 222-2222 in at least 17 area codes, including 213, 510, 626, 818, 714, 408, 310, 559, 661, 831, 951, 619, 323, 562, 760, 949, and 805. *See* Los Abogados, http://abogados222.com/contact.html.

previously used the number as a landline, but ported it to a cellular telephone approximately 5–6 years ago. Plaintiff converted the number to a cell phone after seeking legal advice regarding incoming phone calls.

### B.    Plaintiff rarely uses 2222 number, one of his three cell phones.

Plaintiff is the subscriber for <u>three</u> cell phone lines within the 732 area code: 222-2222 (the "2222 number"), 222-2228[2] (the "2228 number"), and 309-6366 (the "6366 number"). He claims that he has three cell phones for regular basic life and because Sprint offered to [him] with no additional charges[3].

The 2222 number is not his primary number, and he makes relatively few outbound calls using the number. He does not even recall the last time he brought the 2222 number out of the house. However, the 2222 number receives by far the most incoming calls, averaging over 650 per month and over 20 per day since May 2011.

For example, from May 17 to June 16, 2011, Plaintiff's approximate call totals were as follows:

| Number | Inbound calls | Outbound calls |
|---|---|---|
| 2222 number | 1,070<br>(34.5 per <u>day</u>) | 11 |
| 0820 number | 30 | 145 |

---

[2]    In November 2014, he switched one of his cell phone lines from 979-0820 to the 2228 number.

[3]    However, Plaintiff's Sprint records confirm that he is charged $10 for the third line.

| 6366 number | 45 | 89 |

Of the 11 outbound calls made by the 2222 number, this number dwindles to <u>three</u> when excluding calls to check voicemail and to his own numbers, and <u>all three</u> were to call back a party who had called the 2222 number within the previous 7 hours. Plaintiff's claim to use the 2222 number for regular basic life does not stand up to scrutiny.

### C. Plaintiff waits out the four-year limitation period to maximize windfall.

The statute of limitations for a TCPA lawsuit is four years. 28 U.S.C. § 1658(a). As such, the obvious strategy to maximize one's "damages" is to wait approximately four years from the date that calls begin to allow for additional "violations." Despite the consistent and immense call volume the 2222 number was receiving even in 2011, Plaintiff waited several more years before filing his first TCPA lawsuit because of his awareness regarding the legal ramifications of such calls.

Plaintiff filed his first 10 TCPA lawsuits on January 9–10, 2014. In each of those 10 cases, Plaintiff alleged hundreds of calls by each defendant starting in 2010. For this case, Plaintiff has retained recordings of calls alleged to be from Defendant since at least February 2011, and filed suit in March 2015. This is no coincidence, but rather a patient, methodical strategy Plaintiff has employed from the beginning of his scheme, and which has continued through his most recent filings. For the four

lawsuits filed by Plaintiff in February 2016, each alleges that the calls began sometime between February and April 2012. Plaintiff is now over 30 TCPA lawsuits filed in this jurisdiction. There is no reason to expect this pattern to cease without judicial intervention.

> **D. Plaintiff claims he keeps the 2222 number because so his mother in Poland can reach him. His phone records say otherwise.**

In the midst of fabricating the woeful pain and suffering he has suffered from Defendant, Plaintiff tells a superficially plausible tale about his elderly mother in Poland trying desperately to reach him and only being able to remember the number two. This narrative is repeated over and over throughout Plaintiff's multiple depositions in increasingly dramatic fashion.

Plaintiff has testified in deposition on at least seven different occasions how important it is that his mother be able to reach him on the 2222 number. There is one slight problem with Plaintiff's story: <u>he did not receive a single phone call from a number from Poland[4] to the 2222 number</u> from May 2011, until the end of 2015. Curiously, calls from Poland to his other two numbers, the 6366 and 2228 numbers, occur in abundance. These contradictions lead only to one logical conclusion: Plaintiff maintains the number exclusively as a TCPA magnet.

---

[4] Phone numbers in Poland begin with the country code +48 and generally contain nine digits—e.g., +48 87 562 XX XX, a number that appears repeatedly in the incoming call records for the 2228 and 6366 numbers.

**E.      Plaintiff's only current source of income is TCPA litigation.**

Plaintiff's last employment was in construction four to five years ago, and he has been unemployed since that time. He received Social Security disability payments for a back injury following his last employment, although he gave contradictory deposition testimony regarding if he is still receiving those benefits. Plaintiff has received an enormous amount in settlement income from his TCPA lawsuits to date, and is no longer eligible to receive disability payments as a result. Plaintiff has turned these lawsuits into his livelihood, and will continue to do so until a court stops the madness.

## III.   LEGAL ARGUMENT

### A.      Standing to Bring Claims

"Standing represents a jurisdictional requirement which remains open at all stages of the litigation." *National Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 255 (1994).  Plaintiff maintains the burden to prove he has Article III standing. *Lewis v. Casey,* 518 U.S. 343, 357 (1996). "Article III, Section 2 of the United States Constitution restricts federal court jurisdiction to resolving cases and controversies. Standing to sue or defend is an aspect of the case or controversy requirement." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997); *see also* U.S. Const. art. III, § 2, cl. 1.  To meet the "case and controversy" requirement of Article III a plaintiff must allege an "injury in fact—an invasion of a legally protected

interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy. The doctrine developed in our case law to ensure that federal courts do not exceed their authority as it has been traditionally understood." *Spokeo v. Robins*, 578 U.S.___, 194 L. Ed. 2d 635, 643 (2016). To satisfy the Article III standing requirements, a plaintiff must show:

> (1) an injury in fact that is concrete and particularized,
>
> (2) that is fairly traceable to the challenged conduct of the defendant, and
>
> (3) redressable by a favorable decision.

*See Lujan*, 504 U.S. at 560; *see also Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1081 (9th Cir. 2004). And, "[t]he party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561. A plaintiff "cannot satisfy the demands of Article III by alleging a bare procedural violation. A violation of one of the [statute's] procedural requirements may result in no harm." *Spokeo*, 194 L. Ed. 2d at 646.

"Injury in fact is a constitutional requirement, and 'it is settled that **Congress cannot erase Article III's standing requirements by statutorily granting the right to sue** to a plaintiff who would not otherwise have standing.'" *Spokeo*, 194 L. Ed. 2d at 643-644 (emphasis added); *citing Raines v. Byrd*, *supra*, 521 U.S. at 820,

n. 3; *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009); *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 100 (1979) ("In no event…may Congress abrogate the Art. III minima").

In *Spokeo*, the plaintiff alleged a violation of the Fair Credit Reporting Act by claiming that the defendant disseminated false information about him.  While this was a violation of the statute, the Court held that the violation did not, on its own, satisfy the injury requirement.  *Spokeo*, *supra,* 194 L. Ed. 2d 635. To qualify as a party with standing to litigate, a person must show, first and foremost, "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent." *Lujan*, *supra,* 504 U.S. at 560.

> In the context of this particular case, these general principles tell us two things: On the one hand, Congress plainly sought to curb the dissemination of false information by adopting procedures designed to decrease that risk. On the other hand, **Robins cannot satisfy the demands of Article III by alleging a bare procedural violation. A violation of one of the FCRA's procedural requirements may result in no harm**. For example, even if a consumer reporting agency fails to provide the required notice to a user of the agency's consumer information, that information regardless may be entirely accurate. In addition, not all inaccuracies cause harm or present any material risk of harm. An example that comes readily to mind is an incorrect zip code. It is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm.

*Spokeo*, 194 L. Ed. 2d at 646 (emphasis added).

The TCPA permits a private right of action to either: (1) enjoin the violation; (2) "recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or (3) both. *See* 47 U.S.C § 227(b)(3)(A), (B), and (C). Traditionally, plaintiffs have interpreted this statute to confer a statutory right, and therefore, an automatic injury when the statute is violated even if the plaintiff never suffered an actual monetary loss. The Supreme Court in *Spokeo* rejects that proposition in the context of Article III standing:

> Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation. For that reason, Robins could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III.

*Spokeo*, 194 L. Ed. 2d at 645 (emphasis added); *see also Summers*, *supra* 555 U.S. at 496 ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation…is insufficient to create Article III standing"); *Lujan*, *supra*, 504 U.S. at 572. "[T]he injury-in-fact requirement requires a plaintiff to allege an injury that is both 'concrete **and** particularized.'" *Spokeo*, 194 L. Ed. 2d at 640. Here, Plaintiff cannot satisfy the injury-in-fact requirement.

For Plaintiff to recover, he must show that he suffered an injury-in-fact that is both concrete and particularized, and that his injury is fairly traceable to FDS Bank's alleged violation of the TCPA and not some other cause.

**B.**   **Plaintiff consented to receive the calls.**

      **i.**   **Consent is simply "willingness for conduct to occur."**

Calls placed with the "express consent" of a "called party" are not actionable under the TCPA. *See* 47 U.S.C. § 227(b)(1)(A). Here, Plaintiff is a "called party" because he was the subscriber of the 2222 number at issue. *See Leyse v. Bank of Am. Nat. Ass'n*, 804 F.3d 316, 325 (3d Cir. 2015). Express consent is easily demonstrated under the TCPA. *See*, *e.g.*, *Ryabyshchuck v. Citibank (S. Dakota) N.A.*, No. 11-CV-1236-IEG WVG, 2012 WL 5379143, at *3 (S.D. Cal. Oct. 30, 2012) (providing cellular phone number to defendant was evidence of prior express consent under the TCPA).

In its passage of the TCPA, "Congress did not intend to depart from the common law understanding of consent because the statute does not treat the term differently from its common law usage. *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 270 (3d Cir. 2013). As the Third Circuit has recognized, in the context of interpreting the TCPA, consent is simply defined as "willingness in fact for conduct to occur." *Id.* at 270–71 (quoting Restatement (Second) of Torts § 892). Plaintiff can repeat over and over that these calls were "very serious harassment" and caused

him "tremendous emotional trauma," but his behavior and the objective record demonstrate otherwise.

### ii. Plaintiff "gratuitously created circumstances" for his TCPA claim.

It is a general maxim of tort law that "no wrong is done to one who consents." *Beyond Systems, Inc. v. Kraft Foods, Inc.*, 777 F.3d 712, 718–19 (4th Cir. 2015); *see also* RESTATEMENT (SECOND) OF TORTS § 892A cmt. a (1979). Accordingly, "[o]ne who effectively consents to conduct of another intended to invade his interests cannot recover in an action of tort for the conduct or for harm resulting from it." *Id.* § 892A. "This principle has been known as '*volenti non fit injuria*,' or 'to a willing person it is not a wrong.'" *Beyond Systems*, 777 F.3d at 718 (citing BLACK'S LAW DICTIONARY 1805 (10th ed. 2014)). This principle is ideally suited for actions by plaintiffs who "**gratuitously created circumstances** that would support a legal claim and acted with the chief aim of collecting a damage award." *Id.* at fn. 2 (emphasis added) (citing *Gordon v. Virtumundo*, 575 F.3d 1040, 1068 (9th Cir. 2009) (Gould, J., concurring)).

In a concurring opinion in *Gordon*, Judge Gould articulated the intolerance courts should apply to manufactured claims:

> [F]or a person seeking to operate a litigation factory, the purported harm is illusory and more in the nature of manufactured circumstances in an attempt to enable a claim. In my view, manufactured claims should not be tolerated absent a clear endorsement from Congress. Such

> claims would not likely have been recognized at common
> law . . .

*Gordon v. Virtumundo*, 575 F.3d 1040, 1068 (9th Cir. 2009). Generally, tort-related

statutes "are not exempt from common law principles," such as the principle of

*volenti non fit injuria. Beyond Systems, Inc.*, 777 F.3d at 717–18*; see Shager v.*

*Upjohn Co.*, 913 F.2d 398, 404 (7th Cir. 1990). "[I]t is not to be presumed that the

legislature in the enactment of statutes intends to overthrow long-established

principles of law unless such intention is made clearly to appear either by express

declaration or by necessary implication." *Busching v. Sup. Ct.*, 12 Cal.3d 44, 52

(1974)).

The Fourth Circuit's analysis of a similar statutory scheme in *Beyond Systems*

is instructive. In *Beyond Systems*, the Fourth Circuit applied the principle of *volenti*

*non fit injuria* to affirm a district court's judgment against the plaintiff for

manufactured claims under the Controlling the Assault of Non-Solicited

Pornography and Marketing Act ("CAN-SPAM Act"). *Beyond Systems, Inc.*, 777

F.3d 712, 714. In general terms, the CAN-SPAM Act prohibits such e-mail

messaging practices as transmitting messages with "deceptive subject headings" or

"header information that is materially false or materially misleading." *See* 15 U.S.C.

§ 7704(a)(1), (2). The Act also imposes requirements regarding content, format, and

labeling for unsolicited e-mail messages. 15 U.S.C. § 7704(a)(3), (a)(5). Congress

provided a private right of action to providers of Internet access service adversely

affected by a violation of the CAN-SPAM Act, which includes statutory damages of $300 per unlawful e-mail or actual damages, whichever is greater. 15 U.S.C. § 7706(g)(1), (3).

Other than a different medium of communication being used, the plaintiff in *Beyond Systems* is virtually indistinguishable from Plaintiff in the instant case. Plaintiff Beyond Systems "created fake-email addresses, solely for the purpose of gathering spam." *Beyond Systems*, 777 F.3d at 714, 718–19. As further detailed in the opinion:

> [Beyond Systems] embedded these addresses in websites so that they were undiscoverable except to computer programs that serve no other function than to find e-mail accounts to spam. Beyond Systems increased its e-mail storage capacity to retain a huge volume of spam, by which it hoped to increase its eventual recovery under anti-spam statutes. And it intentionally participated in routing spam e-mail between California and Maryland to increase its exposure to spam and thereby allow it to sue under both states' laws.

*Id*. Thus, Beyond Systems operated with the "purpose of maximizing on spam-trap-based litigation." *Id*. at 714. This so-called "spam-trap-based litigation" accounted for 90% of Beyond Systems' income in recent years. *Id*. at 714.

On these facts, the district court held and the Fourth Circuit affirmed "that the evidence was 'overwhelming' that Beyond Systems consented to the harm it claims it suffered." *Id*. at 718–19. Applying the principle of *volenti non fit injuria*, the Court of Appeal further held that "Beyond Systems' consent to—and indeed its solicitation

13

of—the harm at issue in this case prohibits Beyond Systems from recovering under" anti-spam statutes. *Id.*

Plaintiff's conduct here warrants the same result. As in *Beyond Systems*, Plaintiff seeks to use the TCPA and this jurisdiction to operate a "litigation factory." Plaintiff not only consented to the harm he claims to suffer, he actively sought to create the violations: (1) he sought out legal advice regarding potential claims for incoming calls, (2) he converted the 2222 number—one of his many numbers and one for which he cannot remember the last time he brought it out of the house—to a cell phone to create TCPA liability, and then (3) sat and waited as the settlement checks rolled in, which is 100% of his present income.

Plaintiff's manufactured claims are precluded by the principle of *volenti non fit injuria* and should not be tolerated by this Court.

### C.   Plaintiff does not have standing if he manufactured his claim.

Plaintiffs "cannot manufacture standing by merely inflicting harm on themselves…" *Clapper v. Amnesty Int'l USA*, 133 S.Ct. 1138, 1151 (2013). Courts generally have expressed disapproval of the practice of creating an injury in order to collect in a lawsuit. *See also Nat'l Family Planning & Reproductive Health v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006) ("We have consistently held that self-inflicted harm doesn't satisfy the basic requirements for standing. Such harm does not amount to an 'injury' cognizable under Article III.").

This Circuit granted a defendant summary judgment where the plaintiff admitted that she kept multiple cell phone numbers and lines for the express purpose of receiving collection calls intended for other people in order to file TCPA claims against the callers. *Stoops v. Wells Fargo Bank, N.A*., Case No. 15-0083, 2016 U.S. Dist. LEXIS 82380 (W.D. Pa. June 24, 2016).  The court there held that "[b]ecause Plaintiff has admitted that her only purpose in purchasing her cell phones and minutes is to receive more calls, thus enabling her to file TCPA lawsuits, she has not suffered an economic injury."  *Stoops*, 2016 U.S. Dist. LEXIS 82380, at *38-39, *citing Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316, 323 (3d Cir. 2015) (explaining that "only certain plaintiffs will have suffered the particularized injury required to maintain an action in federal court for a [TCPA] violation" and that "[s]omeone with a generalized interest in punishing telemarketers, for example, would not qualify on that basis alone"); *Schumacher v. Credit Prot. Ass'n,* No. 4:13-CV-164, 2015 U.S. Dist. LEXIS 132752, at *13 (S.D. Ind. Sept. 30, 2015) (explaining that "an interest in statutory damages cannot be the sole injury to satisfy Article III requirements"); *Cellco P'ship v. Wilcrest Health Care Mgmt*., No. 09-3534, 2012 U.S. Dist. LEXIS 64407, at *23-25 (D.N.J. May 8, 2012) (in concluding that the plaintiffs lacked standing, noting the significance that "Plaintiffs have abandoned any claim to actual damages, but solely seek statutory damages of $500 per call" and stating that "[t]he TCPA…anticipates damages on an individual basis because the contemplated

plaintiff is an individual natural person or business with a limited number of phone lines on which it might receive telemarketing calls"). The court in *Stoops* concluded that it "therefore must reject Plaintiff's argument that she suffered an injury-in-fact because her economic interests were violated." 2016 U.S. Dist. LEXIS 82380, at *39.

Even though a lack of Article III standing was enough to defeat the *Stoops* plaintiff's claims, the court there went on to explain that plaintiff also lacked prudential standing, *see* 2016 U.S. Dist. LEXIS 82380, at *42, as required by *UPS Worldwide Forwarding v. United States Postal Serv.*, 66 F.3d 621, 625 (3d Cir. 1995) ("Standing has constitutional and prudential components, both of which must be satisfied before a litigant may seek redress in the federal courts."). *UPS Worldwide* requires that "a litigant demonstrate that her interests are arguably within the zone of interests intended to be protected by the statute, rule or constitutional provision on which the claim is based." 66 F.3d at 626 (internal quotations and alterations omitted).  In *Stoops*, the court held that

> Plaintiff's interests are not within the zone of interests intended to be protected by the TCPA. Plaintiff's interests, which include purchasing cell phones with the hope of receiving calls from creditors for the sole purpose of collecting statutory damages, are not among the sorts of interests the TCPA was specifically designed to protect. Given her admissions, which are described above, the Court finds that Plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the TCPA that it cannot reasonably be assumed that Congress

> intended to permit the suit. Indeed, it is unfathomable that
> Congress considered a consumer who files TCPA actions
> as a business when it enacted the TCPA as a result of its
> outrage over the proliferation of prerecorded
> telemarketing calls to private residences, which
> consumers regarded as an intrusive invasion of privacy
> and a nuisance.

2016 U.S. Dist. LEXIS 82380, at *47 (internal citations omitted).  Thus, like Ms. Stoops, if Plaintiff ported his number with the "hope of receiving calls from creditors for the sole purpose of collecting statutory damages," or otherwise manufactured his claims, Plaintiff would likewise not have standing and not be entitled to damages of any kind.[5]

## IV.    CONCLUSION

Wherefore, for the foregoing reasons, FDS Bank respectfully submits that Plaintiff lacks standing to bring his claims and, as such, his claims should be dismissed.

Respectfully submitted,

GERBER & PARTNERS LLP

By:    */s/David H. Ganz*
David Ganz
155 Willowbrook Boulevard, Suite 300
Wayne, New Jersey 07470

---

[5]      Unlike the plaintiff in *Stoops*, Plaintiff does not admit his intentions and instead cannot remember the reasons for taking certain actions.  Also unlike the plaintiff in *Stoop*, who has only filed nine lawsuits, the Plaintiff here has filed over thirty and has been able to support himself exclusively though these claims.

(973) 256-9000

Matthew S. Hendricks, Esq.
(admitted *pro hac vice*)
Macy's – Law Department
111 Boulder Industrial Drive, 2nd Floor
Bridgeton, MO 63044
(314) 342-6354

## CERTIFICATION OF SERVICE

I hereby certify that on this date, I caused to be served via CM/ECF, a true and correct copy of the foregoing Defendant's Memorandum of Law on Standing, on plaintiff's counsel, Yitzchak Zelman, Esq., c/o Marcus Zelman LLC, 1500 Allaire Avenue, Suite 101, Ocean, New Jersey 07712.

Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.

_/s/David H. Ganz_____
David H. Ganz

Dated: February 9, 2017

19