**GERBER & PARTNERS LLP**
155 Willowbrook Boulevard, Suite 300
Wayne, New Jersey 07470
(973) 256-9000
*Attorneys for Defendant, FDS Bank*

| | |
|---|---|
| JAN KONOPCA,<br><br>                        *Plaintiff*,<br><br>vs.<br><br>FDS BANK,<br><br>                        *Defendant*. | UNITED STATES DISTRICT COURT<br>DISTRICT OF NEW JERSEY<br><br>Civil Action No. 3:15-cv-01547-PGS-LHG<br><br>**DEFENDANT'S PROPOSED<br>FINDINGS OF FACT** |

Pursuant to the Court's directive issued at the February 22, 2017 Fact Hearing in this matter, Defendant FDS Bank submits the following Proposed Findings of Fact:

### A. The Porting of Plaintiff's 222-2222 Number from Landline to Cell Phone.

1. In 2004, Plaintiff Jan Konopca ("Plaintiff") got his 222-2222 telephone number as a landline from Verizon. Transcript of Hearing on Issue of Plaintiff's Standing, dated February 16 and 22, 2017 ("HT"), 15:17-22; 118:25-119:6.

2. Plaintiff claimed that he asked Verizon for a number that was easy to remember. HT 119:7-9. He used that number for his construction business. HT 119:17-20.

3. While the 222-2222 number was a landline, Plaintiff sought legal advice about these harassing telephone calls that he had been receiving. HT 19:10-17.

4. While using it as a landline, Plaintiff claimed to have had numerous problems with the operability of that landline over the six or so years he had it as a landline. HT 16:4-12; HT 127:4-9; HT 226:1-2.

5. Before he ported that telephone number from a landline to a cell phone, Plaintiff

received unwanted calls from creditors, including Macy's, that were similar to those of which he complains in this lawsuit.  HT 18:9-15; 200:16-23.

6. In late December 2010, Plaintiff ported the 222-2222 number to become his Sprint cell phone number because he claimed it was easier for his mother, who was approximately 92 years old and lived in Poland, to remember that number when she called him. HT 19:22-20-1; 173:25-174:4; Def. Ex. 1 (Dep. Tr. 116:21-117:7).

7. Plaintiff's other cell phone numbers (of which he had three) were more difficult for his mother to remember.  Def. Ex. 1 (Dep. Tr. 117:8-12).

8. Despite testifying that he kept the 222-2222 number because it was easier for his elderly mother to remember, Plaintiff, at trial, testified that his mother called him on those other numbers more because it was "much easy for her to reach [him]."  HT 174:6-11.

9. Plaintiff also claimed to have called is mother in Poland from his 222-2222 cell phone.  Def. Ex. 1 (Dep. Tr. 118:1-3).

10. Plaintiff also claimed that he ported the number because he was having serious problems with his landlines, as the squirrels were eating the wires.  HT 129:12-130:10.

11. Plaintiff claims that he complained to Verizon "hundreds and hundreds" of times, that Verizon tried to fix the problem but was unsuccessful.  HT 130:14-131:1; 141:5-9; 226:20-23.

12. Plaintiff tape recorded a conversation or conversations he had with Verizon in which he complained to the company.  HT 205:21-23.

13. After he ported the 222-2222 number to his cell phone, Plaintiff got a replacement number from Verizon for his landline that he only used as a fax line, even though he did not use it as such.  HT 141:11-20.

**B.     Despite Plaintiff's "Claim" That He Requested That the Calls to the 222-2222 Number Stop, the Actual Evidence Demonstrates Otherwise.**

14.     When Plaintiff received debt collection calls from Macy's on his landline that were similar to the ones about which he complains in this lawsuit, Plaintiff claims that he called Macy's and asked it to stop calling him.  HT 18:17-19:2; 103:22-104:3.

15.     Cynthia Lopez ("Lopez") is the Director of Collections Operations for FDS Bank. HT 24:9-14.  In that capacity, Lopez oversees the day-to-day operations for the collections business, which includes, among other things, ensuring that staffing levels are appropriate, the training of associates, and the reinforcing of company policies and procedures.  HT 24:15-23l.

16.     In her capacity as Director of Collections Operations for FDS Bank, Lopez is familiar with how collections agents are trained.  HT 25:7-9.  She is also familiar with the policies and procedures of FDS Bank vis-à-vis debt collection procedures.  HT 25:13-17.

17.     During the time period at issue in this case, there were two Macy's customers, each of whom had the 222-2222 telephone numbers assigned to their name, whose FDS accounts were delinquent.  HT 29:9-23; Def. Exs. 5, 6, 7.

18.     Neither of these accounts were under Plaintiff's name, although they did have his telephone number associated with the account.  HT 43:19-24.

19.     The FDS Customer Management Database would reflect any collection activity on a delinquent account; i.e., interactions that occurred with the customer and any changes to the customer's account.  HT 29:24-30:5.

20.     If a person called by FDS Bank indicated that they were not the correct party and asked that his or her telephone number be removed from FDS Bank's computers, FDS Bank would honor that request, mark the phone number in its database as a wrong number and remove it from the system, thereby preventing that number from being called again.   HT 32:19-33:4;

3

46:1-10.

21.    These actions, along with the name of the person who took the action, would all be documented in the database notes, which are considered permanent notes.  HT 33:2-4; 42:10-21; 46:1-10.

22.    Similarly, if the person called indicates that FDS Bank has the wrong number, or that the person called is not the person who answered the call, that too would be notated as a wrong number and the phone number would be removed from the specified collections account. HT 70:2-11.

23.    The FDS Customer Management Database notes for the delinquent accounts in which 222-2222 was listed as associated with the customer do not reflect that any person called at the 222-2222 number had requested that FDS or Macy's remove that number because it was the wrong number.  HT 33:5-11; 39:3-6; 40:8-41:1; 42:1-5; 43:13-15; 45:16-22; 46:1-15; Def. Exs. 5, 6, 7.

24.    Lopez, who reviewed the permanent FDS Customer Management Database notes for the delinquent accounts associates with the 222-2222 numbers could not say that Plaintiff ever told FDS Bank that it had the wrong number.  HT 78:19-21.

25.    If such a request were made, that request would have been reflected in those notes.  HT 33:12-17; 46:1-10.  The notes do not reflect that such a request was made – this despite a claim by Plaintiff that he repeatedly told Macy's that it had the wrong number when Macy's called him.  HT 81:2-8; 117:16-118:7.

26.    Collections agents are never allowed to hang up on any person who is called.  HT 47:7-8.  If a collections agent hangs up on a customer even just once and FDS learns of that hang up, that agent is terminated without being given a second chance.  HT 47:9-12.

4

27. FDS Bank can learn of a hang up scenario through its monitoring of collection agents' calls or through a customer complaint. HT 47:13-18.

28. FDS was never provided with, or learned of, information that a collections agent hung up after calling the 222-2222 number. HT 47:19-22.

29. Plaintiff described the calls from Macy's to his cell phone as "harassing" and making him feel "[v]ery upset, very frustrated." HT 101:20-22; 103:13-14. Yet, Plaintiff never complained to the police that Macy's was harassing him with telephone calls, even though he had twice gone to the police in 2007 to complain about harassing calls from others. HT 110:20-111:2; 114:24-115:4; 168:17-20; 197:25-198:2.

30. Though he took recorded phone calls with Verizon because his experience with Verizon was "very aggravating," Plaintiff has no audio recordings of any calls with FDS Bank, despite those calls being horrendously annoying. HT 205:16-206:11.

31. Plaintiff did not complain to the police about the calls from Macy's because he thought Macy's would press charges against him. HT 169:17-23; 198:3-6; 23-24.

    **C.**     **The Sprint Phone Bills.**

32. The Sprint records between 2011 and 2015 do not reflect any calls made from Poland. HT 87:13-21; Def. Ex. 2.

33. Sprint phone bills can and do reflect calls from Poland – when such calls are actually made. HT 174:25-175:20; 176:1-20; Pl. Exs. 33, 34.

34. The Sprint records do reflect that when the account was first established, certain features were blocked, including text messaging and multimedia messaging. HT 90:14-91:4; Def. Ex. 2. To block those features requires a customer by the customer. HT 91:5-7.

35. The Sprint records do not reflect that the customer requested that any particular

phone number be blocked. HT 91:8-14.

36. Call blocking was a feature available to Sprint customers between 2011 and 2015. HT 91:25-92:2. If a customer wanted assistance in activating that feature, Sprint would have provided that help, either on the phone or through the Sprint website. HT 91:22-24; 93:9-16; 97:25-98:6.

37. To block a call, the customer identifies the phone number(s) that he or she wants blocked. HT 91:17-21; 93:17-24.

38. Sprint will never tell a customer that calls cannot be blocked. HT 98:9-11.

39. From May 2011 to March 2014, Plaintiff received 24,949 calls on his 222-2222 cell phone. Def. Exs. 2, 12.

40. During that same period of time, Plaintiff made only 142 outbound calls, not including calls to his voicemail or other cell numbers. Def. Exs 2, 12.

41. Less than one percent (.57%) of the total calls on the 222-2222 number were calls Plaintiff made to a number other than his voicemail or other cell number. Def. Exs 2, 12.

**D.** **Plaintiff "Cashes In" on Calls to His Cell Phones.**

42. In 2009, Plaintiff earned less than $30,000 from his construction job. HT 187:9-17.

43. One year later, in 2010, Plaintiff had a third car accident (the first two occurring in 1995 and 1997, respectively), which resulted in injuries that forced him to stop work and go on disability. HT 194:22-195:20; 232:13-15.

44. It would have taken years for Plaintiff to earn $800,000 from his construction work. HT 190:8-12.

45. Plaintiff knew how to stop the debt collection calls to his cell phone: file a lawsuit

6

under the TCPA. HT 206:25-207:2.

46. Including FDS Bank, Plaintiff has sued 31 other companies under the TCPA. HT 179:5-11. Twenty-one of those cases involved calls made to his 222-2222 cell phone number. Def. Exs. 14-34.

47. The first of these 31 lawsuits was filed on January 9, 2014. On that day, Plaintiff filed seven TCPA lawsuits in this Court involving a cell phone other than the 222-2222 number.[1] *See Konopca v. NCC Business Servs. of Am., Inc.*, Case No. 3:14-cv-159 (MAS); *Konopca v. Mercantile Adjustment Bureau, LLC*, Case No. 3:14-cv-160 (JAP); *Konopca v. Capital Mgmt. Servs., Inc.*, Case No. 3:14-cv-161 (FLW); *Konopca v. Apex Asset Mgmt., LLC*, 3:14-cv-162 (FLW); *Konopca v. Persolve, LLC d/b/a Account Resolution Assocs.*, Case No. 3:14-cv-163 (PGS); *Konopca v. Strategic Recovery Group, Inc.*, Case No. 3:14-cv-164 (JAP); *Konopca v. Tate & Kirlin Assocs., Inc.*, Case No. 3:14-cv-165 (PGS).

48. One day later, on January 10, 2014, Plaintiff filed three more TCPA cases involving that same cell phone number. *See Konopca v. Everest Receivables, Inc.*, Case No. 3:14-cv-187 (AET); *Konopca v. Recovery Mgmt. Servs., Inc.*, Case No. 3:14-cv-189 (MAS); *Konopca v. Evans Law Assocs., PC*, Case No. 3:14-cv-190 (MAS).

49. On March 20, 2014, Plaintiff began filing the first of twenty-one suits under the TCPA for calls to his 222-2222 number. *See Konopca v. The Finish Line, Inc.*, Case No. 3:14-cv-1810 (PGS). *See* Def. Ex. 33.

50. In order to file that first TCPA lawsuit involving the 222-2222 number, Plaintiff had his Sprint cell phone bills in order to determine how many times that number was called.

---

[1] Pursuant to Federal Rule of Evidence 201, this Court can take judicial notice of these filings involving Plaintiff's other cell phone number. *See In Re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735, 754 (E.D. Pa. 2014) ("court may take judicial notice of court documents to establish the fact of the litigation or of the filings themselves").

HT 221:15-19.

51. Plaintiff waited more than ten months, until January 29, 2015, before filing his next TCPA cases. *See Konopca v. Premier Nevada, LLC, First Premier Bank, and Premier Bankcard, LLC*, Case No. 3:15-cv-647 (PGS); *Konopca v. Walgreen, Co.*, Case No. 3:15-cv-619 (MAS). *See* Def. Exs. 27, 28.

52. Plaintiff filed a slew of TCPA cases over the ensuing months. *See Konopca v. Nations Recovery Center, Inc.*, Case No. 3:15-cv-774 (AET) (Filed Feb. 3, 2015); *Konopca v. Mrs BPO, L.L.C. a/k/a Mrs Assocs.*, Case No. 3:15-cv-773 (PGS) (Filed Feb. 3, 2015); *Konopca v. Wal-Mart Stores, Inc.*, Case No. 3:15-cv-1019 (MAS) (Filed Feb. 8, 2015); *Konopca v. Kohl's Corp.*, Case No. 3:15-cv-1020 (MAS) (Filed Feb. 8, 2015); *Konopca v. Macy's Inc.*, Case No. 3:15-cv-1547 (PGS) (Filed Feb. 27, 2015); *Konopca v. H&R Block, Inc.*, Case No. 3:15-cv-1900 (FLW) (Filed Mar. 13, 2015); *Konopca v. Cellco P'ship d/b/a Verizon Wireless*, Case No. 3:15-cv-1901 (FLW) (Filed March 13, 2015); *Konopca v. Wal-Mart Stores, Inc. and Synchrony Bank f/k/a GE Capital Retail Bank*, Case No. 3:15-1019 (MAS) (Filed Apr. 1, 2015); *Konopca v. Santander Consumer USA, Inc.*, Case No. 3:15-cv-3348 (MAS) (Filed May 15, 2015); *Konopca v. Amerisave Mortgage Corp.*, Case No. 3:15-cv-5339 (FLW) (Filed July 8, 2015); *Konopca v. Center for Excellence in Higher Educ., Inc. Independence Univ. and Stevens-Henager College*, Case No. 3:15-cv-5340 (Filed July 8, 2015); *Konopca v. Citibank, N.A.*, Case No. 3:15-cv-5734 (FLW) (Filed July 24, 2015); *Konopca v. Allstate Ins. Co.*, Case No. 3:15-cv-5736 (MAS) (Filed July 24, 2015); *Konopca v. Comcast Corp.*, Case No. 3:15-cv-6044 (FLW) (Filed August 6, 2015); *Konopka v. Zwicker & Assocites P.C.*, Case No. 3:15-cv-06521 (Filed August 31, 2015); *Konopca v. Credit Control, LLC f/k/a Omni Credit Servs., Inc., d/b/a Omni Credit Servs. of Fla., Inc.*, Case No. 3:15-cv-579 (Filed Feb. 2, 2016); *Konopca v. Route 88 Vehicle Corp. d/b/a*

8

*Honda Universe, Inc.*, Case No. 3:16-cv-744 (PGS) (Filed Feb. 10, 2016); *Konopca v. Credit Collection Servs., Inc.*, Case No. 3:16-cv-745 (MAS) (Filed Feb. 10, 2016); *Konopca v. M&M Bedding, LLC d/b/a Easy Rest Adjustable Sleep Sys.*, Case No. 3:16-cv-746 (AET) (Filed Feb. 10, 2016). *See* Def. Ex. 14, 15, 17, 21, 20, 29, 22, 23, 24, 25, 26, 30, 31, 32, 16, 18 and 19.

53. Based upon the allegations contained within the complaints filed by Mr. Konopka regarding the 222-2222 number, 6 cases allege a full four years of unwanted calls. *See* Def. Ex. 28, 27, 26, 25, 23 and 24.

54. Based upon the allegations contained within the complaints filed by Mr. Konopka regarding the 222-2222 number, 11 such cases (including the instant action) were filed on, or within weeks of, the Statute of Limitations. *See* Def. Ex. 22, 15, 17, 14, 21, 20, 19, 15, 16 and 34.

55. Based upon the allegations contained within the complaints filed by Mr. Konopka regarding the 222-2222 number, 3 such cases were filed within 6 months of the Statute of Limitations. *See* Def. Ex. 29, 30 and 32.

56. Plaintiff has made in excess of $800,000 in the cases he has brought under the TCPA. HT 192:14-17; Docket Index. No. 44.

Dated: March 8, 2017

                                        Respectfully submitted,

                                        GERBER & PARTNERS LLP
                                        *Attorneys for Defendant, FDS Bank*

                          By:    */s/ David H. Ganz*
                                 David H. Ganz

## **CERTIFICATION OF SERVICE**

I hereby certify that on this date, I caused to be served via CM/ECF, a true and correct copy of the foregoing Defendant's Proposed Findings of Fact on:

> Yitzchak Zelman, Esq.
> Marcus & Zelman, LLC
> 1500 Allaire Avenue, Suite 101
> Ocean, New Jersey 07712
> Email: yzelman@MarcusZelman.com
> *Attorneys for Plaintiff*

Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.

Executed on March 8, 2017

>        */s/ David H. Ganz*
>        David H. Ganz