UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAN KONOPCA,<br><br>         **Plaintiff,**<br><br> - against -<br><br>FDS BANK,<br><br>         **Defendant.** | **Civil Action Number:**<br>**3:15-cv-01547-PGS-LHG** |

Plaintiff, Jan Konopca, by and through his undersigned counsel, respectfully submits these proposed findings of fact following the factual hearing conducted by this Court on February 16, 2017 and February 22, 2017:

### PLAINTIFF'S PROPOSED FINDINGS OF FACT

**A. Background**

1. Plaintiff commenced this action on February 27, 2015, alleging that he received hundreds of calls from callers identifying themselves as representatives of Macy's, in violation of the Telephone Consumer Protection Act. Plaintiff then amended his Complaint, on consent of all parties, to name the Defendant as FDS Bank, which is the credit card and collection company who handles the Macy's credit cards. (*See,* Amended Complaint, Docket 15, page 2, ¶1; *Transcript of Hearing.* page 4, lines 4-5).[1]

2. The majority of the facts underlying this action are undisputed, and were stipulated by the parties. Specifically, Defendant stipulated that (a) it made six hundred and twelve (612) calls to the Plaintiff's phone number (732) 222-2222 from March 2, 2011 to March 2, 2015,

---

[1] References to the Transcript of the Factual Hearing are hereinafter noted by the abbreviation 'Tr.'

(b) that each of those 612 calls were placed via the use of an automatic telephone dialing system, as that term is used and defined by 47 USC § 227(a)(1), (c) that the calls were an attempt to collect a debt owed by a customer of Defendant other than Plaintiff, and that (d) the calls were made for non-emergency purposes. (*See,* Stipulation of Facts, Docket 25-5; Pl. Ex. 9).

3. On January 8, 2016, the Plaintiff moved for Summary Judgment. (*See,* Docket 25).

4. The Defendant opposed the Motion for Summary Judgment by alleging that the Plaintiff manufactured his TCPA claim and should therefore be deprived of standing to bring this action, and specifically claiming that the Plaintiff 'ported' his phone number from a landline to a cellular phone solely in order to bring lawsuits under the TCPA. (*See,* Docket 38).

5. On July 22, 2016, this Court denied the Plaintiff's Motion for Summary Judgment without prejudice, and ordered a factual hearing to determine "whether Plaintiff manufactured this lawsuit and thus should be deprived of standing." (*See,* Docket 47).

6. This Court then conducted an extensive factual hearing on February 16, 2017 and February 22, 2017.

B. **History Of The Plaintiff's Phone Number of 732-222-2222**

7. Plaintiff has three cell phone numbers associated with his Sprint Wireless account. Plaintiff has three lines because Sprint offered him additional lines for no additional cost. (Tr. 102:15-17). Plaintiff finds three lines to be useful, so that he has a working phone in case he experiences issues with one of his other phones. (Tr. 102:14-20). It is common for the Plaintiff to experience issues with his phones, such as a non-functioning touchscreen. (Tr. 102:21 – 103:1-7).

8. The Plaintiff's phone numbers are 732-309-6366, 732-222-2228 and 732-222-2222. (Tr. 102:4-9).

9. Plaintiff first obtained the 6366 phone number approximately nineteen years ago, when he signed up for a cellular phone with Sprint Wireless. (Tr. 183:7-8).

10. Plaintiff first obtained the 2222 phone number in 2004. (Tr. 119:2).

11. The calls from the Defendant were received on the Plaintiff's 2222 line. (Tr. 102:3-5).

12. When Plaintiff originally obtained the 2222 phone number, it was assigned to a landline phone, and was provided by Verizon. (Tr. 119:4-6).

13. Plaintiff testified that he did not specifically ask for, or pay extra for, this 2222 phone number, but that he requested an 'easy to remember' phone number, and Verizon offered the 2222 phone number. (Tr. 119:9-16).

14. Plaintiff was employed in the construction field, and he used the 2222 phone number as his business phone number. (Tr. 119:17-20).

15. Plaintiff owned a construction company, and used his 2222 phone number as part of his marketing technique, displaying that number on his business cards, his repair estimates and on magnetic signs displayed on his work van. (Tr. 120:7-17; Tr. 121:23-25; P20; P21; P26; P32).

16. Mr. Konopca testified that he was able to generate construction work as a result of customers calling his 2222 phone number after seeing it displayed number on his work van. (Tr. 122:9-16).

17. Mr. Konopca would also use this easy-to-remember phone number for important people in his life, such as if his 92-year old mother in Poland needed to get ahold of him, or if he met

a girl in a bar and wished her to remember his phone number. (Tr. 236:14-22; 174:22-24; 175:1-3).

18. Mr. Konopca's mother calls him on his the 2222 phone number from time to time, but calls him more often on his other lines, as those are the phones Mr. Konopca ordinarily carries with him. (Tr. 174:4-11; Tr. 175:13-20; Tr. 176:11-20; Pl. Ex. 33; Pl. Ex. 34). International calls received from Mr. Konopca's mother either show up on his phone bills starting with the numbers '488' or as 'Unavailable'. (Tr. 236: 23-25; Tr. 237:1-5, 14-20).[2]

19. In December of 2010, Mr. Konopca then 'ported' the 2222 phone number from a Verizon landline to a wireless cellular account provided by Sprint Wireless. (Tr 129:20-25).

C. **Plaintiff's Motivations For Porting The 2222 Number**

20. Plaintiff testified that he decided to port the 2222 phone number to a cellular phone after experiencing serious problems with his landline. Mr. Konopca testified that the landline phone was 'breaking' and 'making noises', and that he was told by a Verizon technician that squirrels were eating the landline phone wires. (Tr. 130:3-13; Tr. 141:3-4).

21. Mr. Konopca testified that he complained to Verizon "so many, so many times" about the issues he was experiencing on his landline, and that Verizon would send technicians out, but that the issue would persist. (Tr. 130:14-21; Tr. 141:5-9). Mr. Konopca highlighted

---

[2] Nadine St. Hilaire, a process specialist from Sprint Wireless testified that she did not see any phone calls from Poland to Mr. Konopca's 2222 phone number. (Tr. 87:9-11). Ms. St. Hilaire did not state whether she saw any 'Unavailable' calls made to that phone number, despite the fact that Plaintiff testified it was "very common" for such calls to show up as 'Unavailable'. (Tr. 237:19-20). Additionally, the Plaintiff identified at least two instances in which his phone records reflected calls to his 2222 phone number from his mother's number in Poland. (Tr. 175:5-20; Tr. 176:11-20; Pl. Ex. 33; Pl. Ex. 34).

his frustrations with Verizon, testifying that he called Verizon and made "hundreds and hundreds of complaints." (Tr. 130:24-25 – 131:1).

### D. Plaintiff's Use Of The 2222 Phone Line After Porting To A Cell Phone

22. Following the porting of Plaintiff's 2222 line, Plaintiff had three cell phone lines, of which he used the 2222 line the most. (Tr. 170:1-4).

23. Mr. Konopca primarily uses the 2222 phone line as a modem, which allows him to pair his phone with his laptop and to then access the Internet via the laptop. (Tr. 170:6-9, 20-25; Tr. 171:1; Tr. 172:4-7).

24. The 2222 line is also used by Mr. Konopca to call people, but Mr. Konopca prefers to call to use his other two lines for making phone calls. (Tr. 170:10-11; Tr. 172:8-10).

25. The 2222 phone line is the only one of Mr. Konopca's phones that has this Internet modem feature. (Tr. 170:16-19; Pl. Ex. 28).

26. Mr. Konopca does not have any Internet access other than through this phone modem feature. (Tr. 171:2-6).

### E. The 612 Calls Made By FDS To Plaintiff

27. Mr. Konopca does not have an account with Macy's or FDS Bank. (Tr. 117:18). Mr. Konopca does not know why Macy's/FDS Bank was calling his cellular phone. (Tr. 117:20). Mr. Konopca has never provided Macy's/FDS Bank with his phone number, and has never asked those companies to call his phone number. (Tr. 117:21-24).

28. The 612 calls placed by Macy's were made in connection with two separate customers in Macy's account records, with the last names Maher and Ferraro. (Tr. 48:12-15; Def. Ex. D5, D6 and D7).

29. Mr. Konopca is not related to these individuals and does not know who these individuals are. (Tr. 118:13-24).

30. Mr. Konopca advised Macy's on a number of the calls they placed to him that they had the wrong number. (Tr. 117:25 – 118:1-5). Mr. Konopca further called Macy's on a number of occasions and instructed Macy's to stop calling his phone because it was calling the wrong number. (Tr. 118:5-7).[3]

31. Mr. Konopca's repeated requests to Macy's to cease their calls went unheeded, and Macy's did not stop making calls to his 2222 number. (Tr. 118:8-12).

---

[3] Cynthia Lopez, the Director of Collection Operations for FDS Bank testified that she did not see a wrong number notation in FDS Bank's account records, and that she did not see any notes regarding any conversations between Mr. Konopca and FDS Bank. Ms. Lopez's testimony, however, was wildly inconsistent and self-contradictory. On direct examination, Ms. Lopez repeatedly and unqualifiedly testified that if an individual advised FDS Bank that it had the wrong number, that such a wrong number notification would be noted in the account records maintained by FDS Bank. *See e.g.,* Tr. 30:1-5 (It's important to know <u>because we would have documented interactions</u>, any activity that took place with our associates, <u>any conversations that occurred</u>, any changes that happened to the account during that period so this would demonstrate that"); Tr. 32:14-18 ("Yes, these are database notes. So <u>any time</u> that an action is taken on an account <u>such as a conversation</u>, an update to the account, a customer contact, a systemic update that <u>would be placed on the account notes</u> with the date that that occurred"); Tr. 32:22 – 33:4 ("Okay. So <u>if we had a contact with a third-party who's claiming that we're calling their phone number but they're not the individual we're looking for</u>, they would take the action within the same system of marking that phone number as a wrong number, hence removing it from that system, that would prevent the phone calls from continuing; and **all those actions would be documented within these database notes**, along with the name of the person who took the action").

On cross-examination, however, Ms. Lopez expressly admitted that not all phone conversations would necessarily be reflected in FDS Bank's account notes. *See,* Tr. 55:22-23 ("There may have been conversations that aren't reflected in those notes"). As specifically relevant to this action, Ms. Lopez was asked about a number of phone calls that the parties stipulated had been placed by FDS Bank to Mr. Konopca. Ms. Lopez admitted that the account notes did not reflect a six minute call between FDS Bank and Mr. Konopca on May 7, 2011, which the parties had stipulated had occurred in this action. *See,* Pl. Ex. 10; Tr. 56:12-16; Tr. 57:2, 19. Ms. Lopez further admitted that the account notes did not reflect an eight minute call between FDS Bank and Mr. Konopca on May 22, 2011, which the parties had again stipulated had occurred in this action. *See,* Pl. Ex. 10; Tr. 58:12-25; Tr. 59:1. Ultimately, Ms. Lopez admitted that she could not testify as to whether or not Mr. Konopca had ever advised FDS Bank that it had the wrong number. Tr. 78:19-21.

### F. Plaintiff's TCPA Lawsuits

32. Mr. Konopca has received a lot of unwanted calls from many companies on his 2222 phone line. (Tr. 103:15-21). Mr. Konopca received these unwanted calls on his 2222 line while it was still a landline, and continued to receive these calls after the 2222 line was ported to a wireless cellular phone. (Tr. 18:3-15).

33. Mr. Konopca testified that in approximately 2007, he started receiving lots of unwanted calls to his phone numbers ending in 2222 and 6366. (Tr. 179:14-25; 180:1-3).

34. Mr. Konopca made repeated efforts to stop receiving these calls on his phone lines. Mr. Konopca registered his 2222 phone line with the national Do-Not-Call Registry on January 20, 2005. (Tr. 104:4-6; Tr. 104:18-25 – 105:1; Pl. Ex. 5). Mr. Konopca then registered his 6366 phone line with the national Do-Not-Call Registry on January 5, 2008. (Tr. 105:2-9; Pl. Ex. 5).

35. Mr. Konopca testified that he listed his phone numbers in the National Do-Not-Call Registry in order to stop these unwanted calls, but that the calls did not stop. (Tr. 105:10-18).

36. Mr. Konopca further instructed the companies calling his phones to cease calling him. (Tr. 103:24-25 – 104:1-3).

37. Mr. Konopca even called law enforcement to ask for help in stopping these calls coming to his cellular phone. (Tr. 106:5-7).

38. On March 30, 2007, Mr. Konopca went to the Long Branch police department and complained that he was receiving harassing phone calls from the phone number 000-0000. (Tr. 110:20-25 – 111:1-2). The police were unable to help Mr. Konopca with stopping these calls. (Tr. 111:3-6).

39. After the March 30, 2007 complaint to the police, Mr. Konopca again attempted to enlist the aid of law enforcement in stopping these calls. (Tr. 113:16-25). On May 16, 2007, Mr. Konopca went back to the Long Branch Police Department, and complained that he was receiving many harassing calls from a young person. (Tr. 113:4-13). The Long Branch Police contacted the individual calling Mr. Konopca, which resulted in that individual instead pressing charges against Mr. Konopca. (Tr. 115:7-9; Tr. 116:20-25 – 117:1-5). Those charges were ultimately dismissed in court. (Tr. 117:6-9). The Long Branch Police Department was ultimately unable to help Mr. Konopca stop these calls either. (Tr. 117:10-12).

40. In January of 2014, Mr. Konopca began filing lawsuits under the Telephone Consumer Protection Act (the TCPA) against the companies that were calling his cellular phone lines. (Def. Ex. 14-34).

41. In total, Mr. Konopca has filed 31 lawsuits under the TCPA. (Tr. 179:5-11; 219:3-4; Def. Ex. 14-34).

42. Mr. Konopca testified that even though he was receiving unwanted calls on his cellular phone and landline phone in 2007, 2008 and 2009, he did not file a TCPA lawsuit until 2014 because he didn't know that any such cause of action existed. (Tr. 180:4-14).

43. Mr. Konopca received "a lot of calls" on his cellular phone number of 6366 in 2008, but still did not file any TCPA lawsuits until 2014. (Tr. 233:20-21).

44. Mr. Konopca first discovered in 2014 that he could sue companies under the TCPA for calling his cellular phone. (Tr. 182:16-20).

45. Mr. Konopca does not know the basic rules governing the TCPA. He believes that the Statute of Limitations to bring TCPA lawsuits is two years. (Tr. 180:19-25). Mr. Konopca

does not know what statutory damages are provided by the TCPA for calls placed to a cellular phone in violation of that statute, and similarly does not know what statutory damages are provided by the TCPA for calls placed to a landline phone. (Tr. 181:1-12; 181:21-22).[4]

46. No lawyer ever advised Mr. Konopca that he could recover more money under the TCPA for calls received on his cellular phone rather than calls received on his landline phone. (Tr. 142:3-5).

47. Mr. Konopca did not port his phone number from a landline to a cellular phone in order to file TCPA lawsuits against companies calling him. (Tr. 142:10-14; Tr. 167:9-14).

48. Mr. Konopca testified that nobody advised him to port his phone number in order to engender TCPA violations. (Tr. 141:24-25). Mr. Konopca also specifically testified that no lawyer advised him to port his phone number. (Tr. 142:1-2).

49. Mr. Konopca never performed any legal research on his own to determine whether he could recover more money under the TCPA as a result of calls made to his cellphone versus calls to your landline. (Tr. 142:6-8).

50. Mr. Konopca did not sign up for phone numbers just so that he could receive more calls and profit from lawsuits under the TCPA. (Tr. 183:11-14).

51. Mr. Konopca did not wait for calls to accumulate to a large number of calls before he would commence a lawsuit under the TCPA. (Tr. 184:10-13).

52. Mr. Konopca does not consider himself as having or running a TCPA business. (Tr. 182:21-22; Tr. 183:1-3).

---

[4] *See also,* Tr. 181:21-22 (The Court: "He doesn't know anything about the law, I don't know how he can answer that question").

### G. The Actual Harm Caused By Defendant's 612 Calls

53. The Plaintiff is allotted 1,000 minutes each month on his Sprint Wireless plan associated with his 6366 and 2222 cellular phones. (Tr. 176:21-25).

54. Each call made or received by the Plaintiff on his cellular phones (including the 2222 phone line) depletes at least one of those 1,000 minutes. (Tr. 177:3-7).

55. When the Plaintiff would exceed the allotted 1,000 monthly minutes, he would be charged forty cents (.40) for each additional minute used. (Tr. 177:8-13).

56. In the May-June 2011 Sprint monthly billing statement alone, the Plaintiff was charged $96.00 in overage charges for 240 minutes used above the monthly 1,000 minutes allotted. (Tr. 178:1-9; Pl. Ex. 11).

57. During this same billing period, the Plaintiff was called 115 times from the Defendant's phone number of 727-556-7300, and 63 times from the Defendant's phone number of 513-573-8031 for a total of 178 calls during this single billing period alone. (Pl. Ex. 11; Pl. Ex. 10; Docket 46-2).

58. In addition to the pecuniary harm caused by each of the Defendant's 612 calls, the Plaintiff found these relentless calls to be annoying and harassing. (Tr. 197:16-24).

59. When Mr. Konopca utilizes the 'phone as a modem' feature on his 2222 line, and a call is received on that phone line, Mr. Konopca's Internet access is interrupted until the call ends. (Tr. 173:6-17).

**Dated: March 8, 2017**

                          **MARCUS ZELMAN, LLC**

                          **By: /s/ Yitzchak Zelman**

        **Yitzchak Zelman, Esq. (YZ5857)**
        **Ari H. Marcus, Esq.**
        **1500 Allaire Avenue, Suite 101**
        **Ocean, New Jersey 07712**
        **Phone:**  **(732) 695-3282**
        **Fax:**   **(732) 298-6256**
        *Attorney for the Plaintiff*
        *Jan Konopca*