UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAN KONOPCA,<br><br>                      *Plaintiff*,<br><br>    v.<br><br>FDS BANK,<br><br>                     *Defendants.* | Civil Action No.: 15-cv-01547 (PGS)<br><br>**MEMORANDUM AND ORDER** |

On July 22, 2016, the Court denied FDS Bank's motion for summary judgment to dismiss the complaint for lack of standing. The Court determined that the standing issue required a factual hearing, and that was conducted on February 16, 2017 and February 22, 2017. Defendant argues that Plaintiff cannot manufacture his injury and be determined to have standing to bring suit. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, (2013); *Stoops v. Wells Fargo Bank*, 197 F. Supp. 3d 782, U.S. Dist. LEXIS 82380 (W.D. Pa. June 24, 2105). To clarify the issue, *Clapper* and *Stoops* are initially discussed to give context to the term "manufacture the harm."

I.

In *Stoops*, the District Court noted that the Telephone Communication Protection Act (TCPA) was enacted to protect consumers from uninvited intrusive telephone calls that invade their right to privacy. The Court found that there was no injury in fact because Stoops' only use of the cell phone was to "turn a profit." *Id.* at 798. That is , Plaintiff had been in the "business" of suing offenders of the TCPA. Plaintiff owned more than 40 cell phones which "fit in a shoebox"; and "she buys cell phones to manufacture a TCPA lawsuit." *Id*. at 798-99. The Court found that the complained of calls in *Stoops* did not constitute a nuisance or an invasion of privacy because Plaintiff did not tend to unwanted calls, and as such, she had no injury-in fact.

As such, the Court found that the Plaintiff manufactures her own harm and this is insufficient to meet standing requirements.

Similarly in *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, (2013), Justice Alito found that "respondent's contention that they have standing because they incurred certain costs as a reasonable reaction to a risk of harm is unavailing--because the harm respondents seek to avoid was not impending." *Id.* at 416.  In other words, respondents cannot create standing by undertaking a course of conduct in response to a speculative possibility of harm. That is, "by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Id.* at 401.  *See also Pennsylvania v. New Jersey*, 426 U.S. 660, 664 (1976).  In the discussion below, Defendant relies on the rational of *Stoops* and *Clapper*.  That is, no privacy interest protected by TCPA was breached because Plaintiff voluntarily manufactured his harm by porting his land line number to his cell phone in order to create a violation of the TCPA statute and produce an injury.

II.

Plaintiff Jan Konopca, is a resident of Long Branch, New Jersey. (Tr. 101:8) Defendant, FDS Bank, is the credit card and collection company that has an affiliation with Macy's Department store, and it processes Macy's credit card transactions.  By way of stipulation, the parties acknowledge that Plaintiff received 612 calls to his 732-222-2222 cell phone number (hereinafter "2222 number") from March 2, 2011 to March 2, 2015 from FDS Bank seeking payment of Macy's credit card bills from customers other than Konopca.  Each of those 612 calls were placed via the use of an automatic telephone dialing system, as that term is used and defined by the TCPA (47 USC §227(a)(l)).  The Plaintiff received the FDS Bank calls from 4 different numbers. (Tr. 96:2). The calls placed by Defendant to the 2222 number were

made for nonemergency purposes. (Dkt. Rpt. No. 34, Ex. B). The calls to the 2222 number were an attempt to collect a debt owed by a customer(s) of Defendant other than Plaintiff. (Dkt. Rpt. No. 34, Ex. B).

In 2004, Verizon installed a landline home phone with the 2222 number. (Tr. 4:7-12; Tr. 119:1-2). Plaintiff had requested a number that would be easy to remember when he set-up the landline. (Tr.: 15:17-18, 2 1-22). At that time, Plaintiff had worked as an independent contractor in the construction industry, and he used the 2222 number for his business and had the 2222 number printed on business cards, proposals and estimates, and on the side of his van. (Tr. 120:9-14). At his deposition, Plaintiff stated that he called Macy's after the 2222 number was installed on his landline and requested that Macy's stop calling him[1]. (Tr. 18:22-19:2). Plaintiff stated that he registered the 2222 number on the Do Not Call Registry and he had an email confirmation of the submission on January 20, 2005. (T. 104:4-23; Dkt. Rpt. No. 53, Ex. C).

On March 30, 2007, Plaintiff had called the police about harassing calls but he did not receive any help from the police in ending the calls. (Tr. 110:23-24, 111:1-8).

Prior to December 26, 2010, the Plaintiff contacted an attorney about the unwanted calls he was receiving on his landline (Tr. 4:20-24; 19:10-17). Plaintiff contends he was never advised to port the 2222 number from his landline to a cellular phone line in order to fall within the parameters of the TCPA. (Tr. 142:1-2). The plaintiff also said that he had not performed any legal research about whether damages could be awarded on a cellphone rather than a landline (Tr.142:6-9). He said the first time he ascertained he could sue under the TCPA was from attorney Zelman under the TCPA in 2014. (Tr. 182:16-20).

---

[1] Konopca refers to FDS as Macys since FDS was acting on Macy's behalf.

At about the same time of the first lawyer meeting in 2010, he ported the 2222 number from his landline to his cellphone (Tr. 129:12-130).

Plaintiff contends that he ported the 2222 number to his cell phone for three reasons. First, squirrels were gnawing on the lines to the landline causing disrupted service. The testimony was:

> Q. Let's -- let's go to the reason you ported your phone number. At some point when it started it was a landline now it's a cellphone; right?
> A. Yes.
> Q. I believe there was testimony earlier today, was it December of 2010 that number was ported to the Sprint?
> A. That was end of that year, that's probably accurate. At 28 or so, December 2010.
> Q. Why did you port it?
> A. Well, I had serious problem with the landline.
> Q. What kind of problems?
> A. With the lines. The squirrels ate the wires, seems to be according to -- according to the technician, and I had serious problem with phone breaking, making noises, and that was going for since I had the line.
> Q. I'm sorry; what ate the wires?
> A. Squirrels, that's what --
> Q. Squirrels?
> A. That's what the technician -- some technician told me, yes.

(Tr. 129:12 – Tr. 130:5).

Secondly, the 2222 number was ported because his 92 year old mother required an easy number to call when she communicated with him from her home in Poland. On cross-examination, Plaintiff acknowledged that his mother only called the 2222 number twice in four years. (T. 174:25 – Tr. 175:20).

Lastly, Plaintiff contended that the 2222 number was an easy number for women that he met in bars to remember, so those women would call him --- but there was no corroborating evidence that such a call ever occurred. (Tr. 236:14-22 and Tr. 177:233 – Tr. 175-3).

Plaintiff stated that he had told FDS Bank representatives several different times to stop calling the 2222 number after it had been ported to a cellphone. (Tr. 20:17-25). Plaintiff further stated that he did not recall the specific responses from the FDS Bank representatives, but rather such representative would hang up after his request. (Tr. 21:18-24). In response, Cynthia Lopez, the Director of Collections Operations for FDS Bank, noted the company had a protocol in place that any update to a phone number would be recorded in the database with notes to allow for future reference. (Tr. 24:9-14, 33:12-17). According to Lopez, there was no record that Plaintiff ever complained. Ms. Lopez also asserted that it was against company policy for an FDS Bank employee to hang up on a caller. (Tr. 47:7-12).

Plaintiff alleges harm because he was charged for minutes that exceeded the maximum allowed under his phone plan (ECF No. 60, ¶ 54-57). More specifically, Plaintiff had a limited plan on his 2222 number for 1,000 minutes per month for both incoming and outgoing calls (176:21-177:4). There was at least one month when Plaintiff used more than 1,000 minutes and had to pay $96 in overage fees in May 2011. (Tr. 177:23- Tr. 178:9). In addition, Mr. Konopca utilizes the 'phone as a modem' feature on his 2222 line, and when a call is received on that phone line, Mr. Konopca's internet access is interrupted until the call ends. (ECF No. 60, ¶59; Tr. 173:6-17). Plaintiff used the 2222 number most frequently of his three mobile numbers, because of the use of it as a modem for his laptop. (Tr. 173:6-13). Plaintiff stated that the service was consistently interrupted due to incoming calls. (Tr. 168:2-5). For outgoing calls, he typically used his other two cellphones. (Tr. 170:10- 1l). From May 2011 to March 2014, there were 24,949 incoming calls to the 2222 number and 142 outgoing calls to unidentified parties. (Tr. 230:9-1 1).

The defense established the following facts concerning manufacturing of harm.  The parties acknowledged in the stipulation that Konopca filed 31 lawsuits under TCPA, (ECF No. 60, ¶4 1); and so far, Konopca settled and/or awarded over $800,000 in those cases.  Of these cases, there were ten cases brought involving telephone numbers other than the 2222 number. (ECF No. 59, ¶47, 49.) In addition to this lawsuit, there are 20 other lawsuits involving the 2222 number.

(ECF No. 59, ¶ 51, 52). They are;

1. *Konopca v. Premier Nevada, LLC First Premier Bank, and Premier 1-. Bankcard LLC*, Case No. 3:15-cv-647 (PGS);
2. *Konopca v. Walgreen, Co.*, Case No. 3:15-cv-619 (MAS).
3. *Konopca v. Nations Recovery Center, Inc*., Case No. 3:15-cv-774 (AET);
4. *Konopca v. Mrs BPO, L.L.C. a/k/a Mrs Assocs.*, Case No. 3:15-cv-773 (PGS)
5. *Konopca v. Wal-Mart Stores, Inc.*, Case No. 3:15-cv-1019 (MAS);
6. *Konopca v. Kohl's Corp.*, Case No. 3:15-cv-1020 (MAS);
7. *Konopca v. Macy's Inc.*, Case No. 3:15-cv-1547 (PGS);
8. *Konopca v. H&R Block, Inc*., Case No. 3:15-cv-1900 (FLW);
9. *Konopca v, Cellco P'ship d/b/a Verizon Wireless*, Case No. 3:15-cv-1901 (FLW);
10. *Konopca v. Wal-Mart Stores, Inc. and Synchrony Bank f/k/a GE Capital Retail Bank*, Case No. 3:15-1019 (MAS);
11. *Konopca v. Santander Consumer USA, Inc*., Case No. 3:15-cv-3348 (MAS);
12. *Konopca v. Amerisave Mortgage Corp*., Case No. 3:15-cv-5339 (FLW);
13. *Konopca v. Center for Excellence in Higher Educ., Inc. Independence Univ. and Stevens-Henager College,* Case No. 3:15-cv-5340;
14. *Konopca v. Citibank*, N.A., Case No. 3:15-cv-5734 (FLW);
15. *Konopca v. Allstate Ins. Co*., Case No. 3:1 5-cv-5736 (MAS);
16. *Konopea v. Comcast Corp*., Case No. 3:15-cv-6044 (FLW);
17. *Konopca v. Zwicker & Associates PC*, Case No. 3:15-cv-06521;
18. *Konopca v. Credit Control, LLC. a/k/a Omni Credit Servs., Inc., d/b/a Omni Credit Servs. of Fla., Inc.,* Case No. 3:15-cv-579
19. *Konopca v. Route 88 Vehicle Corp. d/b/a Honda Universe, LLC*, Case No. 3:16-cv-744 (PGS);
20. *Konopca v. Credit Collection Servs., Inc*., Case No. 3:16-cv-745 (MAS)
21. *Konopca v. M&M Bedding, LLC d/b/a Easy Rest Adjustable Sleep Sys*., Case No. 3:16-cv-746 (AET);

(MAS);

III.

In reviewing Konopca's alleged harm, he has shown that (1) he has never consented to receiving the 612 calls from an automatic telephone dialing system; (2) Defendant has provided little or no evidence that it adequately monitored the calls to the 2222 number, and (3) Plaintiff has complained on at least two occasions about the calls to Defendant after porting the number (an allegation FDS denies). On the other hand, Konopca's three reasons for porting the 2222 number to his cell phone – the gnawing squirrel, an easier number for calls from his mother (who rarely calls him), and an easy number for women in bars to remember (of which there are no confirmed calls) are incredulous in light of the magnitude of the lawsuits.

Although it is most probable that Plaintiff manufactured the harm based on his motivation to be awarded monetary awards in the lawsuits, the case is distinguishable from *Stoops* and *Clapper* by the fact that Plaintiff never gave consent, and he received 612 calls. It is also probable that Plaintiff incurred some harm in 2010 when he first ported the 2222 number to his cell phone.  From a high level look, neither Plaintiff nor Defendant has a great factual case. As a result, the Court applies a Third Circuit case from earlier this year where it held a single call in violation of the TCPA was sufficient harm to show standing. *Susinno v. Work Out World Inc.*, 862 F.3d 346 (2017).  That rationale applies here because Plaintiff states he called FDS in or around 2010. As such, there is some harm to show standing. Placing this case in context, there should be an opportunity to adjust the monetary relief at trial or at some future motion to determine when the unwanted calls in 2010 turned into manufactured calls.

ORDER

This matter is before the Court on Defendant, FDS Bank's motion to dismiss for lack of standing; and the Court having carefully reviewed and taken into consideration the submissions of the parties, as well as the arguments and exhibits therein presented at the hearings held on February 16, 2017 and February 22, 2017, and for good cause shown, and for all of the foregoing reasons,

IT IS on this 21st day of November, 2017,

ORDERED that Defendant's application for Plaintiff's complaint to be dismissed for lack of standing is denied.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.